**In re SEARCH OF THE RAYBURN HOUSE OFFICE BUILDING ROOM NUMBER 2113 Washington, D.C. 20515.**

**No. 06–0231 M–01.**

United States District Court, District of Columbia.

July 10, 2006.

---

### MEMORANDUM OPINION

HOGAN, Chief Judge.

All laws should be made to operate as much on the law makers as upon the people; ... Whenever it is necessary to exempt any part of the government from sharing in these common burthens, that necessity ought not only to be palpable, but should on no account be exceeded. 2 Founders' Constitution 331 (Philip B. Kurland & Ralph Lerner eds., 1987) (James Madison, The Militia Bill, House of Representatives (Dec. 16, 1790)). Pending before the Court is Congressman William J. Jefferson's Motion for Return of Property and Emergency Motion for Interim Relief, in which he contends that the execution of a search warrant on his congressional office was unlawful in violation of the Constitution's Speech or Debate Clause, separation of powers principle, and Fourth Amendment.[1] Having carefully considered

---

1. Congressman Jefferson's Motion for Emergency Interim Relief sought an Order enjoining FBI agents and the Department of Justice from reviewing or inspecting the seized items and sequestering those items in a secure place. On May 25, 2006, the President issued a Memorandum directing the Solicitor General to take sole custody of the materials seized from Congressman Jefferson's office, and to seal and sequester those materials from any-

the submissions of Congressman Jefferson, the Bipartisan Legal Advisory Group of the Unites States House of Representatives as *amicus curiae*, and the Government, the Court will deny the motion.[2]

## I. BACKGROUND[3]

Over the past year, the Federal Bureau of Investigation (FBI) has been conducting an investigation into whether Congressman William J. Jefferson and other individuals bribed or conspired to bribe a public official, committed or conspired to commit wire fraud, or bribed or conspired to bribe a foreign official, in violation of federal criminal statutes. The investigation centers around allegations that Congressman Jefferson used his position in Congress to promote the sale of telecommunications equipment and services offered by iGate—a Louisiana-based communications firm—to Nigeria, Ghana, and possibly other African nations, in return for payments of stock and cash. As of result of the Government's investigation into the scheme, one of Congressman Jefferson's former staffers pleaded guilty to bribing and conspiring to bribe Congressman Jefferson, and was sentenced to eight years of imprisonment. The President and CEO of iGate also pleaded guilty to bribing and conspiring to bribe Congressman Jefferson.

On Thursday, May 18, 2006, the Government filed with this Court an application and affidavit for a warrant to search Congressman Jefferson's congressional office for paper documents and computer files related to the alleged bribery scheme and other fraudulent transactions. According to Congressman Jefferson and The Bipartisan Legal Advisory Group, the execution of a search warrant upon the office of a sitting Congressman is apparently without historical precedent since the adoption of the Constitution more than 200 years ago. The eighty-three-page affidavit laid out the evidence the Government had obtained over the course of the investigation. The application described in detail the paper documents to be seized and the precise search terms to be used in examining the computer files. The search warrant sought no legitimate legislative material that would be considered privileged under the Speech or Debate Clause.

The application also set forth a set of special search procedures to be used in an effort to minimize the likelihood that any potentially politically sensitive, nonresponsive items would be disclosed, and also to prevent investigators and members of the Prosecution Team from obtaining documents or files that may fall within the purview of the Speech or Debate Clause . . . or any other pertinent privilege. Aff. ¶ 136. These procedures involved the des-

one outside of the Solicitor General's office for forty-five days. Accordingly, the Motion for Emergency Interim Relief is now moot.

2. The Bipartisan Legal Advisory Group presents the institutional position of the U.S. House of Representatives in litigation matters. The members of the Group are the Honorable J. Dennis Hastert, Speaker of the House; the Honorable John A. Boehner, Majority Leader; the Honorable Roy Blunt, Majority Whip; the Honorable Nancy Pelosi, Democratic Leader; and the Honorable Steny H. Hoyer, Democratic Whip. The Court granted the Group's motion for leave to file a brief

as *amicus curiae* in support of Congressman Jefferson's motion in recognition of the importance of the House's interest in and position on the questions of serious constitutional magnitude that are raised in this matter.

3. Certain portions of this litigation remain under seal. Because this Memorandum Opinion and accompanying Order shall be made available to the public, the Opinion refers only to the redacted search warrant affidavit and to other information that is already part of the public record.

ignation of a Filter Team, which was composed of two Department of Justice attorneys who were not on the Prosecution Team and an FBI agent who had no role in the investigation or prosecution of the case.

For paper documents, the Filter Team would review the documents seized to determine first whether each document was responsive, and second whether it fell within the purview of the Speech or Debate Clause or any other privilege. Any documents found to be non-responsive would be returned to counsel for Congressman Jefferson. As to the potentially privileged documents, a log and copies thereof would be provided to Congressman Jefferson's counsel within twenty days of the search. The Filter Team would then submit the documents to the Court for a final determination of privilege. Copies of documents that were found to be responsive and unprivileged would be provided to the Prosecution Team and to Congressman Jefferson's counsel within ten days of the search.

As to computer files, another designated Filter Team (made up of certified FBI computer examiners who had no role in the investigation or prosecution of the case) would perform the search of the computers, subject to the terms laid out in the warrant application. Again, the Filter Team would screen out non-responsive and potentially privileged files in the same manner as was to be done with the paper documents.

Having found that the application and affidavit established probable cause to believe that evidence of a crime would be found in Congressman Jefferson's congressional office, the Court granted the Government's application, issued the warrant, and ordered that the search be conducted on or before Sunday, May 21, 2006. On Saturday, May 20, 2006, federal agents executed the warrant. During the search, the agents excluded both Congressman Jefferson's counsel and counsel for the U.S. House of Representatives. The agents ultimately seized copies of the hard drives of each of the office's computers and two boxes of paper records.

On Wednesday, May 24, 2006, Congressman Jefferson filed the instant motion for return of the seized material under Rule 41 of the Federal Rules of Criminal Procedure. On June 7, 2006, the Bipartisan Legal Advisory Group *(amicus)*, as *amicus curiae*, filed a brief in support of the Congressman's motion. The Government opposed the motion. On June 16, 2006, a hearing was held at which the Court heard oral argument on the motion.

## II. ANALYSIS

Congressman Jefferson moves for return of the property seized during the execution of the search warrant on his congressional office under Rule 41 of the Federal Rules of Criminal Procedure, arguing that the search was unconstitutional as it violated the Speech or Debate Clause, the separation of powers principle, and the Fourth Amendment.

### A. Rule 41

██ The Fourth Amendment shields citizens from unreasonable searches and seizures. Rule 41 of the Federal Rules of Criminal Procedure implements the Fourth Amendment by requiring that an impartial magistrate determine from an affidavit showing probable cause whether information possessed by law-enforcement officers justifies the issuance of a search warrant. *Jones v. United States,* 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). To be valid, a search requires a prior showing of probable cause, the warrant authorizing [the search] must particularly describe the place to be searched,

and the person or things to be seized, and ... it may not have the breadth, generality, and long life of the general warrant against which the Fourth Amendment was aimed. *United States v. White*, 401 U.S. 745, 758, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (internal quotation marks omitted). Here, neither Congressman Jefferson nor *amicus* contend that the search warrant issued here failed to meet any of those requirements.

■ Congressman Jefferson and *amicus* argue that the search was nonetheless unlawful because the manner in which it was executed violated the Constitution. The Supreme Court has made clear that reasonableness is the overriding test of compliance with the Fourth Amendment. *Zurcher v. Stanford Daily*, 436 U.S. 547, 559, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). For it is not the case that searches, however or whenever executed, may never be unreasonable if supported by a warrant issued on probable cause and properly identifying the place to be searched and the property to be seized. *Id.* at 559–60, 98 S.Ct. 1970; *accord United States v. Koyomejian*, 970 F.2d 536, 550 (9th Cir. 1992) (Kozinski, J., concurring) (Reasonableness is an independent requirement of the Fourth Amendment, over and above the Warrant Clause requirements of probable cause and particularity.); *United States v. Torres*, 751 F.2d 875, 883 (7th Cir.1984) ( [A] search could be unreasonable, though conducted pursuant to an otherwise valid warrant, by intruding on personal privacy to an extent disproportionate to the likely benefits from obtaining fuller compliance with the law.). [T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the

search entails. *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Therefore, while the issuance of the search warrant was valid, the search of Congressman Jefferson's office may still have been unlawful if it was an otherwise unreasonable invasion.

Rule 41(g) allows an owner to seek return of his property that has been unlawfully seized by the government. The rule provides in relevant part:

> A person aggrieved by an unlawful search and seizure of property ... may move for the property's return.... The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g).

■ Actions seeking the return of property are governed by equitable principles. *Industrias Cardoen, LTDA. v. United States*, 983 F.2d 49, 51 (5th Cir.1993). Whether to exercise its jurisdiction to order the government to return the property is soundly within the discretion of the trial court. *Id.* Here, the Government urges the Court not to exercise its equitable jurisdiction to decide the Motion for Return of Property at this time.

■ Generally, where a grand jury investigation has commenced, a decision on a Rule 41(g) motion should be deferred until after an indictment has been issued, in the absence of irreparable harm. *See, e.g., United States v. Douleh*, 220 F.R.D. 391, 397 (W.D.N.Y.2003).[4] Here, Con-

---

4. Courts' reluctance to address Rule 41 motions for return of property during criminal investigations stems from the principle that

the exclusionary rule does not apply to proceedings before a grand jury. *See, e.g., In re Two Search Warrants Issued March 14, 1986,*

gressman Jefferson submits that he has suffered irreparable harm, with no adequate remedy at law, because the violation of his constitutional rights cannot be vindicated by an action for damages or any other traditional legal relief. Reply Mem. Of Congressman Jefferson in Supp. of Mot. For Return of Property (Reply) 21. While Congressman Jefferson overlooks the sure availability of a motion to suppress the evidence seized during the search should the Government's investigation result in his indictment, the Court recognizes that [t]he unprecedented search of Congressman Jefferson's office has raised questions of serious constitutional magnitude that directly implicate the fundamental workings of the federal government. Reply 19. The Court agrees that the interests of justice demand that these issues be addressed now. Cf. *Helstoski v. Meanor*, 442 U.S. 500, 506–08, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (denial of motion to dismiss indictment may be immediately appealed when based on the Speech or Debate Clause because there is no other way to provide the full protections of the privilege).

**B. Constitutionality of the Search**

Congressman Jefferson contends that the execution of the search warrant on his congressional office violated the absolute privilege and immunity that Members of Congress enjoy under the Speech or Debate Clause of the Constitution and the separation of powers principle. Further, according to Congressman Jefferson, the search was unreasonable in violation of the Fourth Amendment because his counsel was excluded from the search, and because the search warrant affidavit contained the flawed premise that the Government had exhausted all other reasonable methods of obtaining the evidence sought.

1. *Speech or Debate Clause*

Congressman Jefferson first argues that the search of his congressional office was an unconstitutional violation of his legislative privilege under the Speech or Debate Clause. Article I, Section 6, Clause 1 of the Constitution provides in relevant part:

> The Senators and Representatives ... shall in all Cases, except Treason, Felony, and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place.

This language, known as the Speech or Debate Clause, was approved at the Con-

---

110 F.R.D. 354, 355 (E.D.N.Y.1986) (citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

> Because the grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial. Permitting witnesses to invoke the exclusionary rule before a grand jury would ... delay and disrupt grand jury proceedings.

*Calandra*, 414 U.S. at 349, 94 S.Ct. 613. Motions for return of property were formerly made pursuant to Rule 41(e), under which an unlawful seizure claim was considered to be equivalent to a motion to suppress. See *Douleh*, 220 F.R.D. at 397 n. 5. Effective December 1, 2002, however, Rule 41 was amended and reorganized. What was formerly found at Rule 41(e) is now found at Rule 41(g). Pursuant to the amendments, under Rule 41(g) a court may return seized property to a claimant and impose reasonable conditions to protect access to the property and its use in later proceedings. Fed.R.Crim.P. 41(g). Accordingly, it is no longer the case that property returned subject to a Rule 41(g) motion is necessarily excluded from use in front of the grand jury.

stitutional Convention without discussion and without opposition. See *United States v. Johnson,* 383 U.S. 169, 177, 86 S.Ct. 749, 15 L.Ed.2d 681 (1966) (citing V Elliot's Debates 406 (1836 ed.); II Records of the Federal Convention 246 (Farrand ed.1911)). The language was derived from Article V of the Articles of Confederation: Freedom of speech and debate in Congress shall not be impeached or questioned in any court, or place out of Congress, which in turn was taken from the English Bill of Rights of 1689: That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament. *Id.* at 177–78, 86 S.Ct. 749 (citing 1 W. & M., Sess. 2, c. 2).

 The language in the English Bill of Rights reflected the culmination of a history of conflict between the Commons and the Tudor and Stuart monarchs during which successive monarchs utilized the criminal and civil law to suppress and intimidate critical legislators. *Id.* at 178, 86 S.Ct. 749. The privilege was designed as an important protection of the independence and integrity of the legislature. *Id.* The legislative privilege, protecting against possible prosecution by an unfriendly executive and conviction by a hostile judiciary, is one manifestation of the 'practical security' for ensuring the independence of the legislature. *Id.* at 179, 86 S.Ct. 749 (quoting The Federalist No. 48 (James Madison) (J. Cooke ed., 1961)).

 While the Speech or Debate Clause has English roots, it must be interpreted in light of the American constitutional scheme of government. *Brewster,* 408 U.S. at 508, 92 S.Ct. 2531. In the American governmental structure, the clause serves the additional purpose of reinforcing the separation of powers designed by the Founders. *Johnson,* 383 U.S. at 178, 86 S.Ct. 749. Importantly, as Chief Justice Burger observed, it must be remembered that our system of government differs from the English system in that unlike their Parliament, our Congress is not the supreme authority but a coordinate branch. See *United States v. Brewster,* 408 U.S. 501, 508, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). Our task, therefore, is to apply the Clause in such a way as to insure the independence of the legislature without altering the historic balance of the three co-equal branches of Government. *Id.*

 The first Supreme Court decision that addressed the Speech or Debate Clause held that the privilege should be read broadly, to include not only words spoken in debate, but anything generally done in a session of the House by one of its members in relation to the business before it. *Kilbourn v. Thompson,* 103 U.S. 168, 204, 26 L.Ed. 377 (1880). When the Clause applies, it is an absolute privilege. See *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) (The question to be resolved is whether the actions of the petitioners fall within the sphere of legitimate legislative activity. If they do, the petitioners shall not be questioned in any other Place about those activities since the prohibitions of the Speech or Debate Clause are absolute.) (internal quotation marks omitted) (footnote omitted).

 It is well established that the Clause provides Members of Congress with two distinct privileges. See *Gravel v. United States,* 408 U.S. 606, 614, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). The first is that they are free from arrest while attending or traveling to or from a session of their House. *Id.*[5] It is clear, however, that

5. History reveals, and prior cases so hold, that this part of the Clause exempts Members

the constitutional freedom from arrest does not exempt Members of Congress from the operation of the ordinary criminal laws ... Indeed, implicit in the narrow scope of the privilege of freedom from arrest is, as [Thomas] Jefferson noted, the judgment that legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons. *Id.* at 615, 92 S.Ct. 2614 (citing T. Jefferson, Manual of Parliamentary Practice, S. Doc. No. 92–1, p. 437 (1971)).

 The second privilege provided to Members of Congress by the Clause shields them from questioning in any other place for any speech or debate in either House. *Gravel,* 408 U.S. at 615, 92 S.Ct. 2614. Members may not be made to answer, either in terms of questions or in terms of defending themselves from prosecution, for speech or activities done in furtherance of the legislative process. *Id.* at 616, 92 S.Ct. 2614. Accordingly, the Speech or Debate Clause provides both a testimonial privilege and immunity from liability for legitimate legislative acts. See *McSurely v. McClellan,* 553 F.2d 1277, 1299 (D.C.Cir.1976) ([T]he Speech or Debate Clause acts as an exclusionary rule and testimonial privilege, as well as substantive defense ...).

 The Speech or Debate privilege is broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members. *Brewster,* 408 U.S. at 525, 92 S.Ct. 2531; *Doe v. McMil-*

*lan,* 412 U.S. 306, 317, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973) ([T]he Speech or Debate Clause has finite limits ...). The issue here is whether the Speech or Debate Clause's privileges and immunities extend so far as to insulate a Member of Congress from the execution of a valid search warrant on his congressional office.

 Congressman Jefferson argues that because the Government necessarily reviewed and seized privileged material during the search, without giving Jefferson the opportunity to first segregate such privileged material, the execution of the search violated the Constitution. Congressman Jefferson and *amicus* are both clear that it is not their position that the office of a Member of Congress may never be searched pursuant to a valid warrant. Rather, they argue that the discovery of privileged material by the Executive Branch during the search rendered it unconstitutional. See Reply 9. According to Congressman Jefferson, a search on a congressional office could be executed only *after* the Member of Congress is given the initial opportunity to identify and remove what he deems to be privileged material. See Mem. in Supp. of Mot. for Return of Property (Mem.) 13–14. Carried to its logical conclusion, this argument would require a Member of Congress to be given advance notice of any search of his property, including property outside of his congressional office, such as his home or car, and further that he be allowed to remove any material he deemed to be covered by the legislative privilege prior to a search.[6]

---

from arrest in civil cases only. *Gravel,* 408 U.S. at 614, 92 S.Ct. 2614; *Williamson v. United States,* 207 U.S. 425, 28 S.Ct. 163, 170, 52 L.Ed. 278 (1908) ([T]he term 'treason, felony, and breach of the peace,' as used in the [Speech or Debate Clause], excepts from the operation of the privilege all criminal offenses ...).

6. While Congressman Jefferson does not challenge the Executive's authority to search his home or car, see Reply 2 n.1, if the discovery of privileged legislative material by the Government is a violation of the Constitution, then any location in which legislative material is kept (thus subjecting it to inadvertent seizure) would be insulated from a search, ab-

Congressman Jefferson argues that this matter is controlled by *Brown & Williamson Tobacco Corp. v. Williams,* 62 F.3d 408 (D.C.Cir.1995), which reinforced the principle that the Speech or Debate Clause's testimonial privilege is absolute. In that case, the United States Court of Appeals for the District of Columbia Circuit quashed subpoenas issued to two Members of Congress, finding that the Speech or Debate Clause barred enforcement of the subpoenas because the materials sought were privileged as they came into the Members' possession through the legitimate legislative process. See *id.* at 421. The D.C. Circuit held that documents or other material that comes into the hands of congressmen may be reached either in a direct suit or a subpoena only if the circumstances by which they come can be thought to fall outside 'legislative acts' or the legitimate legislative sphere. *Id.*

Congressman Jefferson's argument blurs the line between a subpoena and a search warrant—this argument reminds one of the proverb that the most dangerous thing in the world is to try to leap a chasm in two jumps. David Lloyd George, British Prime Minister (1863–1945). In fact, the difference between a warrant and a subpoena is of critical importance here. A search warrant, in contrast to a subpoena, is subject to the stringent requirements of the Fourth Amendment, may be issued only pursuant to prior judicial approval, and authorizes Government officers to seize evidence without requiring enforcement through the courts. See *United States v. Miller,* 425 U.S. 435, 446 n. 8, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). In contrast, the person served [with a subpoena]

determines whether he will surrender the items identified in the subpoena or challenge the validity of the subpoena prior to compliance. *In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 854 (9th Cir.1991). Because the case addressed civil subpoenas, and says nothing about the availability of documents pursuant to a search warrant in a criminal investigation, *Brown & Williamson* does not control here.[7]

The Court recognizes that the Speech or Debate Clause provides Congressman Jefferson with a testimonial privilege, and further that the testimonial privilege is absolute. Unlike producing evidence in response to a subpoena, however, which is a testimonial act, see *United States v. Hubbell,* 530 U.S. 27, 36–37, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000), having one's property subjected to the execution of a valid search warrant does not have a testimonial component. See *Crawford v. Washington,* 541 U.S. 36, 51–52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (describing testimonial evidence).

■ Thus, the Speech or Debate Clause's testimonial privilege was not triggered by the execution of the search warrant. Cf. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913) (A party is privileged from producing the evidence but not from its production.). In *Andresen,* the Supreme Court held that the execution of a search warrant does not trigger the Fifth Amendment's testimonial

---

sent prior notice and opportunity to remove the privileged material.

7. In *Brown & Williamson,* the D.C. Circuit acknowledged that the outcome in a case involving criminal rather than civil process may be different, when it noted that the Su-

preme Court has at least suggest[ed] that the testimonial privilege might be less stringently applied when inconsistent with a sovereign interest such as the sovereign interest in law enforcement. 62 F.3d at 419–20.

privilege because there is no compulsion to speak or act:

> ... petitioner was not asked to say or to do anything. The records seized contained statements that petitioner had voluntarily committed to writing. The search for and seizure of these records were conducted by law enforcement personnel. Finally, when these records were introduced at trial, they were authenticated by a handwriting expert, not by petitioner. Any compulsion of petitioner to speak, other than the inherent psychological pressure to respond at trial to unfavorable evidence, was not present.

427 U.S. at 473, 96 S.Ct. 2737. Similarly here, Congressman Jefferson was not made to say or do anything. In fact, as his motion highlights, he was not even present at the search. Like in *Andresen,* there simply was no compulsory testimony to trigger the privilege. The Speech or Debate Clause protects Members of Congress from being questioned. U.S. Const. art. I, § 6, cl. 1. Here, Congressman Jefferson has not been questioned in any way. Just as a search warrant does not trigger the Fifth Amendment's testimonial privilege, neither does a search trigger the Speech or Debate Clause's testimonial privilege.

*Amicus* argues that *Andresen's* principle that a search warrant does not trigger a testimonial privilege is inapplicable here because the Speech or Debate Clause protects against any compelled disclosure of legislative activities and information, not inferences that may be drawn from the act of producing documents as with the Fifth Amendment. See Mem. of P. & A. of the Bipartisan Legal Advisory Group of the U.S. House of Representatives as *Amicus Curiae (Amicus* Brief) 23 n.15. The arguments made by Congressman Jefferson and *amicus* stand for the proposition that legislative material is absolutely privileged from review by or disclosure to either of the co-equal branches of government. While it is important to recognize that different policies undergird the Speech or Debate privilege and the Fifth Amendment's privilege against self-incrimination, the argument made by *amicus* contorts the policies behind the Speech or Debate Clause.

■■ The purpose of the Speech or Debate Clause is not to promote or maintain secrecy in legislative activity. As Justice Douglas once stated, "The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know what their government is up to." *EPA v. Mink,* 410 U.S. 73, 105, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting) (quoting Henry Steele Commager from The New York Review of Books, Oct. 5, 1972, at 7).

■■ The purpose of the Speech or Debate Clause is rather to protect the independence and integrity of the legislature by not questioning Members of Congress for their legitimate legislative acts. See *Brown & Williamson,* 62 F.3d at 416 (legislative privileges and immunities designed to prevent intimidation by the executive and accountability before a possibly hostile judiciary) (quoting *United States v. Johnson,* 383 U.S. 169, 181, 86 S.Ct. 749, 15 L.Ed.2d 681(1966)). The Fifth Amendment also protects one from being compelled to answer questions. Just as the Fifth Amendment does not protect a person from disclosure of incriminating evidence, the Speech or Debate Clause does not prohibit disclosure of legislative material. Rather, it prohibits a Member from having to answer questions as to his legislative activity. Here, Congressman Jeffer-

son has not been questioned about actions that fall within the sphere of legitimate legislative activity.

The D.C. Circuit has held that the touchstone of the Speech or Debate Clause privilege is interference with legislative activities. *Brown & Williamson,* 62 F.3d at 421. Thus the Court's decision here depends upon whether the execution of the search warrant impermissibly interfered with Congressman Jefferson's legislative work. See *MINPECO, S.A. v. Conticommodity Services, Inc.,* 844 F.2d 856, 859 (D.C.Cir.1988). Unlike in *Brown & Williamson,* the material sought here was not privileged as it did not fall within the legitimate legislative sphere. Accordingly, the Court finds that the search did not impermissibly interfere with Congressman Jefferson's legislative activities.

Congress' capacity to function effectively is not threatened by permitting congressional offices to be searched pursuant to validly issued search warrants, which are only available in relation to criminal investigations, are subject to the rigors of the Fourth Amendment, and require prior approval by the neutral third branch of government. As discussed earlier, search warrants are very different from subpoenas, which may be issued at will, are subject only to the broadest standard of relevance, and require the active participation of the recipient.

Finally, the Court finds no support for the proposition that a Member of Congress must be given advance notice of a search, with an opportunity to screen out and remove materials the Member believes to be privileged. Indeed, the Court is aware of no case in which such a procedure is mandated by any other recognized privilege. To the contrary, in *Zurcher,* the Supreme Court expressly rejected such a requirement where the location to be searched contained material protected under the First Amendment. 436 U.S. at 567, 98 S.Ct. 1970 ( [W]e decline to reinterpret the [Fourth] Amendment to impose a general constitutional barrier against warrants to search newspaper premises, to require resort to subpoenas as a general rule, or to demand prior notice and hearing in connection with the issuance of search warrants.). The Supreme Court held that no special protections are required when a search warrant is sought for a newspaper office, finding that the standard preconditions for a warrant are sufficient to protect against unjustified intrusions on the press. *Id.* at 565, 98 S.Ct. 1970. The Court stated:

> Aware of the long struggle between Crown and press and desiring to curb unjustified official intrusions, the Framers took the enormously important step of subjecting searches to the test of reasonableness and to the general rule requiring search warrants issued by neutral magistrates. They nevertheless did not forbid warrants where the press was involved, did not require special showings that subpoenas would be impractical, and did not insist that the owner of the place to be searched, if connected with the press, must be shown to be implicated in the offense being investigated.... Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices.

*Id.* Similarly here, the Framers were well aware of the long struggle between Crown and the legislature, yet did not forbid warrants where the Legislative Branch is involved and did not impose any additions to

the preconditions for such a warrant. As in *Zurcher*, the preconditions for a properly administered warrant that seeks only unprivileged material that falls outside the sphere of legitimate legislative activity are sufficient to protect against the harms assertedly being threatened here. No one argues that the warrant executed upon Congressman Jefferson's office was not properly administered. Therefore, there was no impermissible intrusion on the legislature.

The fact that some privileged material was incidentally captured by the search does not constitute an unlawful intrusion.[8] See *In re Possible Violations of 18 U.S.C. §§ 201, 371, 491 F.Supp. 211, 214 n. 2 (D.D.C.1980) (The Speech or Debate Clause does not protect confidentiality of material). The Speech or Debate Clause is not undermined by the mere incidental review of privileged legislative material, given that Congressman Jefferson may never be questioned regarding his legitimate legislative activities, is immune from civil or criminal liability for those activi-

ties, and no privileged material may ever be used against him in court.

 *Amicus* contends that even a review of the documents by the Court to determine privilege is unconstitutional. See *Amicus* Brief 29. Contrary to the arguments of *amicus*, legislators do not have the right to determine the scope of their own privilege under the Speech or Debate Clause. The Founders expressly rejected a constitutional proposal that would have permitted Members collectively to be the exclusive judges of their own privileges. 2 *Records of the Federal Convention of 1787* 503 (Max Ferrand ed., 1966). In opposition to the proposal, Madison explained that it would be preferable to make provision for ascertaining by law the extent of privileges previously & duly established rather than to give a discretion to each House as to the extent of its own privileges. Id. Indeed, it is the Judicial Branch that ascertains the requirements of the law in accordance with Article III of the Constitution. See *United States v. Nixon*, 418 U.S. 683, 704–05, 94 S.Ct. 3090,

---

**8.** The cases that address how to remedy the improper use of protected legislative material in a criminal prosecution support the proposition that the mere disclosure of Speech or Debate material to the Government does not offend the Constitution, as in those cases, privileged material had certainly been exposed to the Government. The remedy imposed in those cases was simply that the material was excluded from use against a Member of Congress. See *Johnson*, 383 U.S. at 185, 86 S.Ct. 749 (With all references to [Speech or Debate material] eliminated [from the indictment], we think the Government should not be precluded from a new trial on this count, thus wholly purged of elements offensive to the Speech or Debate Clause.); *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C.Cir.1995) ( [T]he Government does not have to establish an independent source for the information upon which it would prosecute a Member of Congress. Rather . . . the Member must show

that the Government has relied upon privileged material.); Id. at 1301 (where the indictment is valid on its face, the Speech or Debate Clause does not require pre-trial review of the evidence to be presented at trial); *United States v. McDade*, 28 F.3d 283, 300 (3d Cir.1994) (even if two overt acts were alleged in violation of the Clause, there were numerous other overt acts to support the indictment); *United States v. Myers*, 635 F.2d 932, 941 (2d Cir.1980) (dismissal not required although grand jury heard some evidence of legislative acts that is privileged by the Speech or Debate Clause); *compare United States v. Helstoski*, 635 F.2d 200, 205–06 (3d Cir.1980) (indictment must be dismissed where the improper introduction of privileged matter permeated the whole proceeding). None of these cases suggest that the *exposure* of protected legislative material to the Government violated the Speech or Debate Clause.

41 L.Ed.2d 1039 (1974) (citing The Federalist No. 47, at 313 (S. Mittell ed., 1938)).

The power to determine the scope of one's own privilege is not available to any other person, including members of the coequal branches of government: federal judges, see *In re Certain Complaints Under Investigation*, 783 F.2d 1488, 1518–20 (11th Cir.1986), or the President of the United States, see *Nixon*, 418 U.S. at 703–05, 94 S.Ct. 3090. When President Nixon asserted that the separation of powers doctrine precludes judicial review of a President's claim of privilege, the Supreme Court held that it is the province and duty of this Court 'to say what the law is' with respect to the claim of privilege presented in this case. *Nixon*, 418 U.S. at 703–05, 94 S.Ct. 3090 (quoting *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803)). In *Nixon*, the Court supported its conclusion regarding the executive privilege by relying upon a series of cases interpreting the explicit immunity conferred by the Speech or Debate Clause. 418 U.S. at 704, 94 S.Ct. 3090 (citing *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973); *Gravel*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583; *Brewster*, 408 U.S. 501, 92 S.Ct. 2531; *Johnson*, 383 U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681). The Court stated that it has consistently exercised the power to construe and delineate claims arising under express powers such as the legislative privilege. *Nixon*, 418 U.S. at 704, 94 S.Ct. 3090.

The formulation of the Speech or Debate privilege implies that the judiciary cannot avoid determining what are the outer limits of legitimate legislative process. *Brown & Williamson*, 62 F.3d at 415. The claim by *amicus* that the Constitution does not allow a document-by-document review by the judiciary fails. See *In re Possible Violations of 18 U.S.C. §§ 201, 371*, 491 F.Supp. 211 (D.D.C.1980) (order-ing *in camera* hearing to determine whether subpoenaed documents were covered by the legislative privilege at which Government was allowed to be present and to contest the claims of privilege); *Benford v. Am. Broad. Cos.*, 98 F.R.D. 42, 45 & n.2 (D.Md.1983) (requiring detailed index of potentially privileged documents under Speech or Debate Clause to be submitted for judicial review and suggesting the need for *in camera* review of certain relevant documents to determine whether the congressional defendants have accurately characterized their content); cf. *Nixon*, 418 U.S. at 706, 94 S.Ct. 3090 (Absent a claim of need to protect [national security], we find it difficult to accept the argument that even the very important interest in confidentiality of Presidential communications is significantly diminished by production of such material for *in camera* inspection with all the protection that a district court will be obliged to provide). The district court in *Benford* refused to blindly accept the[ ] conclusory and seemingly self-serving suggestion that [the House Select Committee on Aging] will screen what is and what is not protected. 98 F.R.D. at 45. Review of allegedly privileged material by the Court is allowed and appropriate under the Constitution.

■ The D.C. Circuit has recognized that the Supreme Court has been careful not to extend the scope of [the Speech or Debate Clause] further than its purposes require. *Rostenkowski*, 59 F.3d at 1302 (quoting *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). The Clause's shield does not extend beyond what is necessary to preserve the integrity of the legislative process. *Id.* (quoting *Brewster*, 408 U.S. at 517, 92 S.Ct. 2531). The view of the Speech or Debate privilege espoused by Congressman Jefferson and *amicus* extends that privilege far beyond that which its pur-

poses require, and far beyond anything the law can support. The Court has found no law, and Congressman Jefferson and *amicus* point to none, which sustains the provision of such a sweeping protection to Members of Congress. To do so would eviscerate the effect and purpose of a search warrant wherever legislative materials are kept.

 Here, Congressman Jefferson has not been made to answer, either in terms of questions or in terms of defending himself from prosecution, for speech or activities done in furtherance of the legislative process. Therefore, the search did not violate the Speech or Debate Clause.[9]

### 2. *Separation of Powers*

 Congressman Jefferson also argues that the issuance and execution of the search warrant in this case violated the general principle of the separation of powers, stating that [t]he delicate balance of our democratic system was disrupted when the court authorized the executive branch to search the Member's office and peruse and remove Speech or Debate material.

Mem. 13. This argument too must fail. As the Supreme Court has recognized, The check-and-balance mechanism, buttressed by unfettered debate in an open society with a free press, has not encouraged abuses of power or tolerated them long when they arose. This may be explained in part because the third branch has intervened with neutral authority. *Brewster,* 408 U.S. at 523, 92 S.Ct. 2531.

Indeed, this Court intervened here with the neutral authority of the third branch as a check on the power sought to be exerted by the Executive Branch when it authorized a particularized search warrant only upon a showing of probable cause. The statement by *amicus* that if the search here is upheld, in the future the Government need only to persuade a federal judge to obtain warrants to search other congressional offices, is a gross trivialization of the role of the judiciary. *Amicus* Brief 33.[10] A federal judge is not a mere rubber stamp in the warrant process, but rather an independent and neutral official sworn to uphold and defend the Constitution.

9. The Government argues that even if the execution of the search warrant impermissibly intruded on legislative activity, the careful procedures established by the Government here are sufficient to protect Congressman Jefferson from suffering any prejudice. Cf. *Weatherford v. Bursey,* 429 U.S. 545, 556–58, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (no constitutional violation where undercover agent overheard protected conversation between defendant and his attorney, but did not disclose that information to Prosecution Team, because there was not at least a realistic possibility of injury to [defendant] or benefit to the State). The Court finds that a harmless-error analysis is not appropriate in the context of the Speech or Debate privilege. See *United States v. Swindall,* 971 F.2d 1531, 1548 n. 21 (11th Cir.1992) (a harmless-error analysis will not excuse a violation [of the Speech or Debate Clause]); cf. *Brown & Williamson,* 62 F.3d at 419 (The degree of disruption [of the legislative process] is immaterial .... any

probing of legislative *acts* is sufficient to trigger the immunity.) (emphasis in original). Here, there was no intrusion into legitimate legislative activity, as the search warrant sought only non-privileged material, and the Congressman was not compelled to provide any testimony as to his legitimate legislative activity. The Government's incidental and cursory review of documents covered by the legislative privilege, in order to extract non-privileged evidence, does not constitute an intrusion on legitimate legislative activity.

10. *Amicus* goes even further when it claims that the execution of a search warrant on a congressional office threatens to reduce Congress to a subordinate branch of government by opening the door to unchecked executive branch overreach and abuse. *Amicus* Brief 32. This claim does not merely trivialize the role of the Court, but actually ignores it completely.

If there is any threat to the separation of powers here, it is not from the execution of a search warrant by one co-equal branch of government upon another, after the independent approval of the third separate, and co-equal branch. Rather, the principle of the separation of powers is threatened by the position that the Legislative Branch enjoys the unilateral and unreviewable power to invoke an absolute privilege, thus making it immune from the ordinary criminal process of a validly issued search warrant. This theory would allow Members of Congress to frustrate investigations into non-legislative criminal activities for which the Speech or Debate Clause clearly provides no protection from prosecution. Our speech or debate privilege was designed to preserve legislative independence, not supremacy. *Brewster,* 408 U.S. at 508, 92 S.Ct. 2531. The execution of the search warrant upon Congressman Jefferson's congressional office did not violate the separation of powers principle.

3. *Fourth Amendment*

■■■ Finally, Congressman Jefferson contends that the search of his office was unreasonable in violation of the Fourth Amendment because his counsel was barred from the office during the search, and because the Government relied on a false premise in the search warrant affidavit that it had exhausted all lesser intrusive means of obtaining the evidence sought. The Court finds that there is no right to have one's counsel present during the execution of a search warrant, that there is no exhaustion requirement to the issuance of a search warrant, and further that the affidavit contained no false prem-

ise. The search was reasonable under the Fourth Amendment.

■■■ Congressman Jefferson asserts that the barring of his counsel from his office during the search violated Rule 41 and rendered the search unreasonable in violation of the Fourth Amendment. Federal Rule of Criminal Procedure 41(f)(2) provides:

> An officer present during the execution of the warrant must prepare and verify an inventory of any property seized. The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken. If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.

*See also United States v. Daniel,* 667 F.2d 783, 785 (9th Cir.1982) (Neither Fed. R.Crim.P. 41(d) nor the Fourth Amendment requires that the owner of the premises searched be present at the time of the inventory.). The rule says nothing about a property owner's counsel or designated representative. The Government is not required to permit a property owner or his counsel to supervise the execution of a search warrant. The plain language of the Rule clearly contemplates that the owner *need not* be present, as it explicitly provides that when an owner is not present, any credible person may witness the inventory of the search. Fed.R.Crim.P. 41(f)(2).[11]

The Court is not aware of any authority, and Congressman Jefferson points to none, that holds that the right to counsel extends to the execution of a search warrant. As the Supreme Court has noted,

---

**11.** Congressman Jefferson suggests that the search warrant return was defective because it does not identify anyone in whose presence

it was prepared or verified. Mem. 8. Rule 41 does not require the witness to sign or otherwise affirm the inventory or warrant return.

the Constitution protects property owners not by giving them license to engage law enforcement officers in debate over the scope or basis for the warrant, but by requiring that warrants be issued by neutral magistrates and by permitting parties to seek suppression after the fact. *United States v. Grubbs,* —— U.S. ——, ——, 126 S.Ct. 1494, 1501, 164 L.Ed.2d 195 (2006). A right to be present at searches is not available to any other person under the Fourth Amendment. See *United States v. Stefonek,* 179 F.3d 1030, 1034 (7th Cir. 1999). The Court will not create such a right for Congressman Jefferson here.

■ Congressman Jefferson and *amicus* also argue that the search was unreasonable because the Government did not exhaust all less intrusive approaches to obtaining the evidence. Both recognize that such a standard is nowhere to be found in Rule 41 law (indeed they cite no law supporting this argument). *Amicus* states instead that the Government established [such a standard] for itself, and urges the Court to hold the Justice Department to that standard. *Amicus* Brief 41; see Reply 16–17. Neither the Fourth Amendment nor Rule 41 requires the Government to establish that a search is the least intrusive means of obtaining evidence. See *Zurcher,* 436 U.S. at 564–68, 98 S.Ct. 1970. The Government made such a showing in the search warrant application here not because the law requires it, but to demonstrate that it did not lightly or precipitously seek a search warrant in this investigation.

■ To the extent that Congressman Jefferson argues that the search warrant was unreasonable because it contained false statements regarding the Government's exhaustion of lesser intrusive means of obtaining the documents, the Court finds that the affidavit to the search warrant accurately stated that the Government had exhausted all reasonable and timely alternative means of obtaining the evidence sought.

■ While the search here entailed an invasion somewhat greater than usual because it took place in a congressional office certain to contain privileged legislative material, the Government has demonstrated a compelling need to conduct the search in relation to a criminal investigation involving very serious crimes, and has been unable to obtain the evidence sought through any other reasonable means.[12] Therefore, the search conducted of Congressman Jefferson's congressional office was reasonable under the Fourth Amendment. See *Camara,* 387 U.S. at 536–37, 87 S.Ct. 1727 ([T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails).[13]

12. Searches of other areas in which privileged material is expected to be found have not been held to be unreasonable in violation of the Fourth Amendment. *See, e.g., United States v. Triumph Capital Group, Inc.,* 211 F.R.D. 31, 43 (D.Conn.2002) (search of computer believed to contain privileged attorney-client communications using filter team, with ultimate review by magistrate judge before any document was turned over to prosecution team, was proper, fair and acceptable method of protecting privileged communications). While some district courts have expressed reservations about the use of filter teams in seizing material protected by the attorney-client privilege, those courts have instead favored the use of special masters, magistrate judges, or the district court itself to conduct the review. *See, e.g., United States v. Neill,* 952 F.Supp. 834, 839–42 (D.D.C.1997). The Court is aware of no case, however, which has found that the presence of privileged material in the location to be searched rendered such a search unreasonable in contravention of the Fourth Amendment.

13. The Memorandum issued by President Bush on May 25, 2006, which directed the sealing of the seized materials, expired on Sunday, July 9, 2006. Accordingly, as of

## III. CONCLUSION

■■■■■ The facts and questions of law presented here are indeed unprecedented. It is well-established, however, that a Member of Congress is generally bound to the operation of the criminal laws as are ordinary persons. The Speech or Debate Clause does not make Members of Congress super-citizens, immune from criminal responsibility. *Brewster*, 408 U.S. at 516, 92 S.Ct. 2531. Members of Congress are not exempt[ ] . . . from liability or process in criminal cases. *Gravel*, 408 U.S. at 626, 92 S.Ct. 2614.

The existing broad protections of the Speech or Debate Clause—absolute immunity from prosecution or suit for legislative acts and freedom from being questioned about those acts (including privilege from the testimonial act of producing documents in response to a subpoena)—satisfy the fundamental purpose of the Clause to protect the independence of the legislature. The Court declines to extend those protections further, holding that the Speech or Debate Clause does not shield Members of Congress from the execution of valid search warrants. Congressman Jefferson's interpretation of the Speech or Debate privilege would have the effect of converting every congressional office into a taxpayer-subsidized sanctuary for crime. Such a result is not supported by the Constitution or judicial precedent and will not be adopted here. See *Williamson v. United States*, 28 S.Ct. at 167 ( [T]he laws of this country allow no place or employment as a sanctuary for crime.) (quotation omitted).

For the foregoing reasons, the Court has found that the search executed on Congressman Jefferson's congressional office was constitutional, as it did not trigger the Speech or Debate Clause privilege, did not offend the principle of the separation of powers, and was reasonable under the Fourth Amendment. Accordingly, the Court will deny the motion for return of property. An appropriate order will accompany this Memorandum Opinion.

## *ORDER*

Pending before the Court is Congressman William J. Jefferson's Motion for Return of Property and Emergency Motion for Interim Relief. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the Motion for Return of Property is DENIED. It is further ORDERED that the Emergency Motion for Interim Relief is DISMISSED as moot. It is further

ORDERED that the Clerk of the Court is directed not to seal this Order and the accompanying Memorandum Opinion, and to make those documents available to the public. It is further

ORDERED that because the Memorandum issued by President Bush on May 25, 2006, which directed the sealing of the materials seized during the execution of the search warrant at issue here, expired on Sunday, July 9, 2006, the Department of Justice shall be free to regain custody of the seized materials, and to resume its review thereof, as of Monday, July 10, 2006.

SO ORDERED.